UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

TRIUMPH FOODS, LLC, CHRISTENSEN
FARMS MIDWEST, LLC, THE HANOR
COMPANY OF WISCONSIN, LLC, NEW
FASHION PORK, LLP, EICHELBERGER
FARMS, INC., and ALLIED PRODUCERS'
COOPERATIVE, individually and on behalf of its
members,

                Plaintiffs,

      v.

ANDREA JOY CAMPBELL, in her official
capacity as Attorney General of Massachusetts, and
ASHLEY RANDLE, in her official capacity as
Massachusetts Commissioner of Agriculture,

                Defendants.

CIVIL ACTION
NO. 1:23-cv-11671-WGY

---

**PARTIES' AMENDED JOINT PRETRIAL MEMORANDUM**

Pursuant to Local Rule 16.5(d) of the Local Rules of the United States District Court for the District of Massachusetts, and in accordance with the Court's Order dated September 19, 2023 (ECF No. 48) and October 6, 2023 (ECF No. 67), Plaintiffs, Triumph Foods, LLC, Christensen Farms Midwest, LLC, the Hanor Company of Wisconsin, LLC, New Fashion Pork, LLP, Eichelberger Farms, Inc., and Allied Producers' Cooperative, individually and on behalf of its members (collectively, "Plaintiffs") and Defendants Andrea Joy Campbell, in her official capacity as Attorney General of Massachusetts, and Ashley Randle, in her official capacity as Commissioner of the Massachusetts Department of Agricultural Resources (collectively, "Defendants," and collectively with Plaintiffs, the "Parties") submit this Joint Pretrial Memorandum in advance of the Final Pretrial Conference.  This Joint Pretrial Memorandum amends and supersedes the original documents that were erroneously filed by the Parties in advance of the originally scheduled Pretrial Conference.

## I.      Proposed Pre-Trial and Trial Schedule

**Plaintiffs' Proposed Schedule**

Plaintiffs support a pre-trial and trial schedule that results in expedited relief, in light of the consolidated trial and preliminary injunction setting pursuant to Fed. R. Civ. P. 65(a). As discussed more fully below, Plaintiffs were ready to proceed to trial as originally slated on October 10, 2023. However, Plaintiffs also believe that this matter can be resolved via early motion for partial summary judgment based on undisputed facts because the law discriminates against out of state farmers and processors in violation of the dormant Commerce Clause.

**Discovery:**  Plaintiffs have agreed to voluntary, early and reasonable in scope discovery to facilitate any information needed by the Defendants.  Plaintiffs have requested multiple times since the filing of the Complaint on July 31, 2023, for Defendants to inform Plaintiffs of any

1

discovery that are of interest to Defendants so that Plaintiffs could produce it.  Plaintiffs have proactively offered to voluntarily provide documents, interrogatories, photos/videos and even depositions if such could be done without delaying the trial itself.  Last Friday night, on October 6, 2023 at 5:43 p.m. (ET), Plaintiffs received *for the first time* any indication as to the scope of discovery that Defendants are seeking in this matter.  Defendants served thirty-eight (38) requests for production of documents and sixteen (16) interrogatories, which Plaintiffs will review and be prepared to generally discuss at the time of the pre-trial conference.  Plaintiffs anticipate deposition notices to follow.  This delayed service of discovery is true, despite the fact that Defendants have stated for weeks now, and certainly since the originally slated Preliminary Injunction hearing on September 6, 2023, that they want discovery and Plaintiffs have agreed to consider any informal discovery requests to be submitted and responded to on a voluntary basis. Furthermore, Defendants are certainly not without discovery, as upon first filing of the Complaint and Motion for Preliminary Injunction, Defendants were given ten declarations from Plaintiffs outlining the scope of each witness's testimony, including declarations from each of Plaintiffs they have listed as witnesses.

**Case Stated Basis**:  Aside from the claims that are arguably ripe now for early partial summary judgment, the Plaintiffs believe that the remaining portions of the case can easily proceed on a Case Stated basis.   Much of the information is in the public domain, can be established with judicial notice taken, or should reasonably be stipulated to by the parties. However, as to claims in addition to the dormant Commerce Clause discrimination, because Defendants have and continue to refuse to stipulate to *anything* related to the claims at issue and will not waive their cross examination to *any* witnesses, Plaintiffs are also prepared to have all witnesses testify at trial and can proceed immediately.  By way of example, Plaintiffs proposed

28 pages of proposed stipulated facts, and most paragraphs were stricken by Defendants for purposes of this joint filing. Defendants' approach seems like an unnecessary use of judicial resources and an effort to delay the injunctive relief by the court.

**Trial Date:** Plaintiffs were prepared to proceed to trial on October 10, 2023, as originally slated and noted above. Plaintiffs remain available for trial as soon as the court will allow. Defendants, however, outline a proposed trial schedule below which delays adjudication of both injunctive relief and a ruling on the merits to 2024, largely based on their claimed need for discovery.

While Plaintiffs need prompt adjudication of this matter on the merits, in an effort to accommodate Defendants, Plaintiffs have informed Defendants multiple times that Plaintiffs would not object to Defendants' below proposed scheduling order if Defendants agreed to delay enforcement of Question 3 until the final adjudication of the case on the merits. Defendants refused. **If the Court is inclined to allow for Defendants' proposed timeline and does not believe an early motion for partial summary judgment would resolve this case, Plaintiffs respectfully request the court grant Plaintiffs' pending motion for preliminary injunction or, alternatively, issue an administrative stay.** *See, e.g.*, *Nat'l Urb. League v. Ross*, 977 F.3d 698, 700, 703 (9th Cir. 2020); *see In re Abbott*, 800 F. App'x 293, 295 (5th Cir. 2020) (per curiam). Plaintiffs reserve the right to submit further briefing on a requested administrative stay, should the Court require the same. Defendants should not enjoy the benefit of refusing to agree to a stay, while simultaneously expecting the Plaintiffs to agree to extensive discovery, just now outlined for the first time, and informing the Court that discovery is the basis for the substantially delayed trial date.

A. **Defendants' Proposed Schedule**

Defendants propose the following pre-trial discovery and final trial schedule:

**Week of November 6th** – Responses to document requests (including document production) served; 34(a)(2) inspection(s) of sow housing operation(s) run by Plaintiffs (N.B. Plaintiffs have indicated they will raise a discovery dispute to such entry, and therefore, a Court order may be required.)

**Week of November 20th** – Interrogatory responses due

**Week of December 4th** – Parties exchange any newly-disclosed expert reports

**Weeks of December 11th and December 18th** – 30(b)(6) depositions taken

**Week of January 1st** – Any remaining 30(b)(6) depositions/expert depositions taken

**Week of January 15th** – Final Joint Pre-Trial Memorandum and Pretrial Briefs filed

**Week of January 22nd** – Final Trial Conference

**Week of January 29th** – Trial

If the Court grants Plaintiffs' request herein for a schedule that includes summary judgment briefing, the Defendants would propose that summary judgment take place after the close of discovery, with pre-trial and trial dates following thereafter. Defendants continue to believe this matter may be able to be resolved on a Case Stated basis, but require a period of discovery to obtain information that is currently within the Plaintiffs' control and to determine the facts to which the Parties could jointly stipulate.

Defendants have been expeditiously preparing this case for trial following the Court's order consolidating the preliminary injunction hearing with a trial on the merits. To provide the Court with the record necessary to decide the legal issues in this case, Defendants have served discovery to test the many factual allegations made in Plaintiffs' complaint and in their declarations. Defendants served these discovery requests within four days after the Court's ruling dismissing nine of ten of the Plaintiffs' claims, and have offered to discuss those requests with the Plaintiffs to ensure they are not unduly burdensome, while still providing the information

necessary for Defendants to adequately test Plaintiffs' claims. Defendants do not agree to waive any of the rights to which they are entitled by the Federal Rules of Civil Procedure and the Federal Rules of Evidence, which both apply within consolidated proceedings.

If the Court agrees to entertain Plaintiffs' request to rule on their preliminary injunction or for an administrative stay, Defendants request a hearing on that motion. In that case, Defendants would request a more traditional discovery schedule than proposed above.

## II.    **Concise Summary of the Evidence**

### A.    **Plaintiffs' Summary**:

The evidence demonstrates that the Question 3 Minimum Size Requirements for Farm Animal Containment ("Question 3" or the "Act") unconstitutionally discriminates and targets out-of-state farmers and pork processors who ensure the supply of pork into Massachusetts in violation of the dormant Commerce Clause.  The facts which support this claim are not contested, and otherwise can be further supported through public information and judicial notice taken.  The Act discriminates against Plaintiffs and out of state farmers and processors through both the Act's FMIA facility sales exemption and the fact that *only* out of state farmers and processors were impacted by the Act, as Massachusetts farms and processors were already in compliance.  **Plaintiffs believe these discrimination claims alone under the dormant Commerce Clause are dispositive and the court can resolve this matter via early motion for partial summary judgment.**

Alternatively, the matter can proceed on a Case Stated Basis, but despite this, Defendants have not agreed to any of the Plaintiffs' proposed declarations or the vast majority of the Plaintiffs' proposed Statement of Facts, and have further declined to waive their right to discovery or cross examination. Plaintiffs' listed witnesses and exhibits remain only necessary if Defendants maintain this position.

If not resolved via early motion for partial summary judgment and if Defendants maintain their position on both discovery and cross examination to not allow for a Case Stated basis submission, Plaintiffs will offer evidence through both live testimony and documents to prove the Act discriminates against interstate commerce in favor of economic protectionism and competing business interests, and that sponsors of the proposed Act directly misled voters to obtain the passage of the law. Specifically, Plaintiffs intend to offer evidence concerning the circumstances present within the Commonwealth both from breeding pig farms and in-state meat processing facilities, together with the ballot initiative background and information presented to the Commonwealth's voters at the time the Act was passed in 2016 and the fact that the Act allows beneficial exemptions to advantage the Commonwealth over other states, especially states which carry the burden for the primary supply of pork to the state. This will also demonstrate the economic protectionist impact of the Act. Plaintiffs will demonstrate the Act's discriminatory purpose and effects through the ballot initiative and legislative history record and related authorities concerning the passage of the Act and the Regulations within the Commonwealth of Massachusetts. In addition, Plaintiffs will also offer evidence through direct testimony of its Plaintiffs and economic expert, Dr. Jayson Lusk, Ph.D., to show the disparate impact that is placed on out-of-state pig farmers and processors, and interstate commerce as a whole, as a result of the Act and its Regulations.

In addition, Plaintiffs will offer evidence concerning the discriminatory impact that the exception to the definition of "sale" within the Act and Regulations has on the out-of-state meat processors, including Triumph Foods. Plaintiffs will explain how competitive advantages provided to in-state farmers and processors are not available to out-of-state farmers and processors and further demonstrate how the Act and Regulations burden the meat processing industry, too,

through testimony of Matthew England, CEO of Triumph Foods. For example, only three Massachusetts processors are United States Department of Agriculture ("USDA") certified, and Plaintiffs believe those processors ship primarily outside of the state. ECF No. 17, ¶¶ 161-62. The Act provides these processors a loophole for compliance, because when they sell intrastate, the facility is exempted from compliance if the sale occurs at the Federal Meat Inspection Act ("FMIA") facilities. *Id.* at ¶ 163. Nationwide, this is not a practice that Triumph can engage in for the distribution of their product, especially when outside the state.

Plaintiffs also intend to present additional evidence concerning the substantial burden that the Act and its Regulations imposes on out-of-state farmers and processors, in violation of the dormant Commerce Clause and the *Pike v. Bruce Church* balancing test. The evidence will show that the burdens, including the vast non-economic burdens, are far-reaching and are excessive in comparison to any local benefit. Specifically, Plaintiffs will present evidence to show the burdens on interstate commerce span the entire pork supply chain and also specifically to each individual Farmer Plaintiff who may be called to testify at trial. Plaintiffs' expert analysis from Dr. Janeen Salak-Johnson will demonstrate that the Act, marketed as an animal welfare law to this Court, actually greatly *harms* the breeding pigs and their offspring by making aggressive behavior and injured pigs a reality. Dr. Salak-Johnson will also testify to the lack of scientific evidence that the Act – and other laws like it - protects consumers from the risk of foodborne illness and disease, and that the sow housing promoted by the Act actually *increases* such risks. Plaintiffs further intend to submit evidence from farmers themselves about the harms caused to animals by the Act, as well as the substantially increased risk to their employees and the impacts on worker safety. Plaintiffs will present evidence concerning the food safety and animal welfare precautions already in place, both at the Farmer Plaintiffs' operations and at Triumph Foods' processing facility.

Plaintiffs will present evidence concerning the state and federal regulations that govern their operations to ensure animals are treated humanely and food safety risks are analyzed and incorporated into their day-to-day operations, and again, how the Act and Regulations are burdening the processing facilities in order to ensure non-compliant Whole Pork Meat does not enter Massachusetts.

Plaintiffs further intend to offer additional expert and factual testimony from Dr. Mike Eisenmenger, D.V.M., to testify concerning his experience and observations made working as a licensed veterinarian exclusively at sow housing operations. Dr. Eisenmenger can offer factual and opinion testimony concerning his observations made related to the animal welfare and health of the sows generally, as well as tied to specific sow housing systems that he has observed over the course of his career as a veterinarian. The substance of his anticipated expert testimony will not only address his experiences at sow farms, but intended to offer opinions concerning the spread of disease within the swine industry, the animal welfare impact on the health of the sow that is tied to specific farmer-specific choices that are made, animal welfare impacts associated with sow housing operations specifically, and his opinion concerning the specific impact on animal welfare tied to the Act and Regulations' requirements imposed on sow operations.

*Irreparable Harm*

Because the trial is a consolidated preliminary injunction hearing and trial on the merits pursuant to Fed. R. Civ. Proc. 65(a), Plaintiffs remain prepared to submit evidence concerning the immediate risk of irreparable harm that will exist if injunctive relief is not granted. Plaintiffs largely have previewed the evidence for the Defendants and Court through submission of their Declarations in Support of Motion for Preliminary Injunction, and will present written documentation and testimony to support such statements before the Court. Plaintiffs' testimony

concerning the irreparable harm that face the breeding pigs that are covered under the Act will be addressed through both Farmer Plaintiffs' own experience in the industry and firsthand observations of aggressive sow behavior, as well as through Dr. Salak-Johnson's testimony and supporting materials relied upon in formulating her opinions identified in her Declaration. *See generally*, ECF. No. 27-7. The evidence will also show irreparable economic harm facing both the Plaintiffs if the Act is enforced, as well as the Commonwealth and national pork market as a whole. This will be accomplished through testimony, written documentation in support and expert testimony by Dr. Jayson Lusk.

Plaintiffs reserve the right to supplement these topics which are in summary form only.

**B.    Defendants' Summary**:

Defendants currently are not in a position to completely summarize what the evidence will show, because, as stated above and in their portion of the Joint Status Report [ECF No. 45], filed September 14, 2023, and on which the Court reserved issuing an order until the final pre-trial conference set for October 10, 2023, Defendants request a reasonable period of discovery to enable them to seek discovery into the core factual issues in this matter, including but not limited to those described below in Part III. Because Defendants have not yet obtained discovery, the Defendants reserve the right to supplement their summary of the evidence following receipt and review of this discovery.

Defendants expect that the evidence will show that: (1) Plaintiffs have sold Whole Pork Meat in Massachusetts; (2) some portion of Plaintiffs' Whole Pork Meat derives from the cruel confinement of breeding pigs, as defined by the Massachusetts law; (3) Plaintiffs' Whole Pork Meat that derives from the cruel confinement of breeding pigs may no longer be sold in Massachusetts, subject to a limited sell-through period and a current stay of enforcement for

those products that are shipped out of state; (4) Massachusetts does not control the pricing of

Plaintiffs' Whole Pork Meat products; (5) Massachusetts does not regulate Plaintiffs'

confinement practices; (6) Massachusetts regulates the sale of agricultural products and practices

within Massachusetts; (7) Plaintiffs make a business decision as to whether to sell their product

in Massachusetts; (8) in order to continue selling into Massachusetts, other out-of-state pork

producers have already taken steps to convert their breeding sow housing; and (9) Plaintiffs do

not risk civil or criminal penalties if they opt to cease selling Whole Pork Meat derived from the

cruel confinement of breeding pigs in Massachusetts.  Defendants further expect the evidence to

show that the Massachusetts law is not unconstitutionally discriminatory in purpose or in effect.

Defendants further expect the evidence will show that the alleged economic or other

burden on the interstate pork market imposed by the Massachusetts law is *de minimis*.

Defendants have retained an economic expert, Dr. Devrim Ikizler, who is anticipated to respond

to the declaration of Dr. Jayson Lusk, as presented in Dr. Lusk's Declaration in Support of

Plaintiffs' Motion for Preliminary Injunction [ECF No. 27-8].  Dr. Ikizler is also anticipated to

testify that market forces (*i.e.*, economic incentives shaping supply and demand) will determine

which operations choose to offer whole pork meat products that are compliant with

Massachusetts law, and that operations will choose to do so if they conclude it is economically

beneficial to their businesses.  Dr. Ikizler is further anticipated to testify that shifts in consumer

demand nationwide have driven an increasingly specialized pork supply chain. Dr. Ikizler is

additionally anticipated to testify that increased product differentiation is a healthy industry trend

that facilitates competition and increases business and industry dynamism and will provide new

market opportunities.

Defendants are in the process of considering the identification and/or retention of additional witnesses, including expert witnesses, to testify as to one or more of the following topics: (1) the natural behaviors of pigs, (2) the effects of various confinement practices on pigs, (3) animal husbandry practices related to pigs raised for pork meat, (4) tracking pigs and pork meat through the supply chain, and (5) public health effects related to various animal confinement practices. Although not yet formally retained, Defendants anticipate potentially calling as expert witnesses James Reynolds, D.V.M. to testify with respect to the effects of confinement methods on animal welfare and/or Leon (Sam) Barringer, D.V.M. to testify with respect to tracking and traceability within the swine industry.

Defendants note that the above-identified witnesses are not available to appear to testify the week of October 10th.

Defendants reserve the right to supplement these topics, and the witnesses who would testify with respect to these matters.

## III.    Fact Established by Pleadings, Stipulation, Or Admissions of Counsel

## The Plaintiffs

1.      Plaintiff Triumph Foods, LLC ("Triumph") is a member-owned company and produces pork products that are sold locally, nationally, and internationally. It was founded in 2003. Triumph is headquartered in St. Joseph, Missouri, and is owned by Christensen Farms Midwest, LLC, The Hanor Company of Wisconsin, LLC, New Fashion Pork, LLP, Eichelberger Farms, Inc. and Allied Producers' Cooperative, from which Triumph receives a large portion of its pig supply.

2.      Triumph processes approximately 5.2 million pigs annually.

3.      Christensen Farms Midwest, LLC ("Christensen Farms") is a member-owner of

Triumph. Its farms are located in Minnesota, Iowa, Nebraska, Illinois, and South Dakota.

4.     The Hanor Company of Wisconsin, LLC ("Hanor") is a member-owner of Triumph. Its farms are located in Wisconsin, Oklahoma, North Carolina, Iowa and Illinois.

5.     New Fashion Pork, LLP ("NFP") is a member-owner of Triumph. Its farms are located in Minnesota, Indiana, Iowa, Illinois, South Dakota, Wyoming, and Wisconsin.

6.     Eichelberger Farms, Inc. ("Eichelberger") is a member-owner of Triumph. Its farms are located in southeast Iowa, Missouri, and Illinois.

7.     Allied Producers Cooperative ("APC") is a member-owner of Triumph and is a cooperative.  APC is headquartered in Iowa, but its members operate in various states throughout the Midwest.

8.     Christensen Farms Midwest, LLC, The Hanor Company of Wisconsin, LLC, New Fashion Pork, LLP, Eichelberger Farms, Inc. and Allied Producers' Cooperative farm pigs to supply Triumph's pork processing operations. Each Plaintiff, apart from Triumph, has breeding pigs, and after the breeding pigs give birth, Christensen Farms Midwest, LLC, The Hanor Company of Wisconsin, LLC, New Fashion Pork, LLP, Eichelberger Farms, Inc. and Allied Producers' Cooperative raise the pigs until they are ready for market, *i.e.*, slaughter.

9.      The Christensen Farms Midwest, LLC, The Hanor Company of Wisconsin, LLC, New Fashion Pork, LLP, Eichelberger Farms, Inc. and Allied Producers' Cooperative are not members of the National Pork Producers Council.  Triumph Foods cannot be a member of the National Pork Producers Council.

**The Defendants**

10.     Defendant Campbell is the Attorney General of the Commonwealth of Massachusetts.

11.    Defendant Randle is the Commissioner of the Massachusetts Department of Agricultural Resources who oversees the Massachusetts Department of Agricultural Resources.

**The Act and Regulations**

12.    A ballot committee called the Citizens for Farm Animal Protection ("CFAP"), was formed to support the passage of the 2016 ballot initiative, the "Prevention of Farm Animal Cruelty Act," referred to as "Question 3."

13.    The national Humane Society of the United States ("HSUS") was the primary author and a proponent of Question 3.

14.    The HSUS was also the author and a primary supporter of California's Proposition 12, a ballot initiative adopted by voters in 2018.  Cal. Health & Saf. Code §§ 25990, 25993.

15.    The Information for Voters, 2016 Ballot Questions ("2016 Ballot Question Booklet"), published by the Secretary of the Commonwealth, was mailed to all eligible voters prior to the 2016 election.

16.    On November 8, 2016, 77% of participating Massachusetts voters approved Question 3, the "Prevention of Farm Animal Cruelty Act."  The Prevention of Farm Animal Cruelty Act was enacted by Chapter 333 of the Acts of 2016.

17.    The Act, as amended, is codified at Mass. Gen. Laws Ch. 129 App., § 1-1 *et seq*.

18.    In December 2021, the Massachusetts Legislature amended portions of the Act by enacting Chapter 108 of the Acts of 2021.

19.    No changes were made to the confinement standards regarding breeding pigs, apart from extending the date by which the sale of Whole Pork Meat not in compliance with the Act would be prohibited. The Act was amended in a manner that changed the effective date for the standards as applied to breeding pigs to August 15, 2022. ECF No. 35-1, pp. 67-74.

20.     The Act originally mandated the Attorney General to promulgate regulations for the implementation of the Act by January 1, 2020. ECF No. 35-1, pp. 64-65.

21.     The Attorney General did not promulgate regulations by January 1, 2020. Regulations were delayed and became effective on October 1, 2021. Mass. Register 1453 (Oct. 1, 2021) at 424-34.

22.     Acts (2021) Chapter 108 amended the Act to defer the mandate to the Department of Agricultural Resources—instead of the Attorney General—to promulgate regulations for the implementation of the Act not more than six months after the effective date of Acts (2021) Chapter 108 (October 1, 2021). ECF No. 35-1, pp. 73.

23.     Regulations to implement and address enforcement of the Act were promulgated by the Department of Agricultural Resources and went into effect on June 10, 2022 (the "Regulations"), with certain exceptions. The Regulations are included at 330 CMR 35.01-08.

24.     The Regulations particular to the sale of Whole Pork Meat were stayed in August 2022, at the behest of the pork industry during litigation, ultimately staying enforcement of the Regulations until August 23, 2023. *See e.g., Massachusetts Restaurant Association et al. v. Healey*, Case No. 4:22-cv-11245-MLW, ECF Nos. 19, 20.

25.     The MDAR Regulations supersede any such previously issued regulations imposed by the Attorney General's office.

26.     In the litigation cited above (*MA Rest. Assoc.*), which remains pending, Defendants agreed, at the behest of the pork industry, to stay enforcement of the regulations with respect to transshipment of Whole Pork Meat into and through the Commonwealth, while a proposed change to the current Regulations is considered to authorize the sale of Whole Pork Meat within the Commonwealth if it is destined for out-of-state delivery, e.g., to neighboring New England states.

14

27.     Aside from the stays of enforcement ordered in *Massachusetts Restaurant Association et al. v. Healey*, the Act and the Regulations are currently enforceable and prohibit the sale in Massachusetts of non-compliant Whole Pork Meat.

## Swine Production Operations

28.     Breeding pigs are female pigs utilized for breeding and giving birth to the piglets that ultimately become pigs sent to market.

29.     Breeding pigs are generally artificially inseminated, litters of piglets are born, and the piglets are raised for three to four weeks before they are weaned.

30.     Breeding pigs generally are in gestation for three months, three weeks and three days (total of 115 days).

31.      Christensen Farms Midwest, LLC, The Hanor Company of Wisconsin, LLC, New Fashion Pork, LLP, Eichelberger Farms, Inc. and Allied Producers' Cooperative' farrow-to-finish operations take approximately 24-26 weeks.

32.     Once pigs reach harvest weight, Christensen Farms Midwest, LLC, The Hanor Company of Wisconsin, LLC, New Fashion Pork, LLP, Eichelberger Farms, Inc. and Allied Producers' Cooperative send them to packing and processing facilities, including but not limited to the Triumph Foods processing facility and the processing facility jointly owned by Triumph Foods and Seaboard known as Seaboard Triumph Foods.

33.     Christensen Farms Midwest, LLC, The Hanor Company of Wisconsin, LLC, New Fashion Pork, LLP, Eichelberger Farms, Inc. and Allied Producers' Cooperative sell pigs to Triumph to be processed into pork and sold.

## Triumph's Pork Processing Facilities

34.     Triumph receives a large portion of its pig supply from Christensen Farms Midwest,

LLC, The Hanor Company of Wisconsin, LLC, New Fashion Pork, LLP, Eichelberger Farms, Inc. and Allied Producers' Cooperative.

35.    Pork processed by Triumph is packed and shipped to customers in the United States and is exported to at least 25 countries.

36.    Both of Triumph's processing facilities are "inspected facilities" for purposes of the Federal Meat Inspection Act.

37.    Pigs are transported by Christensen Farms Midwest, LLC, The Hanor Company of Wisconsin, LLC, New Fashion Pork, LLP, Eichelberger Farms, Inc. and Allied Producers' Cooperative to Triumph's processing facilities via truck or trailer.  When the truck or trailer first arrives, Triumph's workers unload the trucks.

## IV.    Contested Issues of Fact

### A. Plaintiffs' Proposed Joint Statement of Facts

To proceed on an efficient basis as prompted by the Court, Plaintiffs spent well over a week preparing what Plaintiffs perceived as an objective and unbiased joint statement of facts, outlined in **Exhibit A**.  Except those facts stipulated to in Section III, Defendants do not agree to stipulate to the Plaintiffs' proposed joint factual summary reflected in Exhibit A. Plaintiffs understand the facts outlined in Exhibit A to be those that Defendants intend to dispute at the time of trial, or at least dispute now without undertaking discovery.  Plaintiffs believe these facts should be undisputed facts and do not agree with the characterization of "contested" for purposes

of any dispositive motion and reserve the right to assert the same facts as undisputed material

facts for that purpose.

### B.  Defendants' Contested Issues of Fact

Defendants identify the following key contested factual issues, which are not intended to

be exhaustive:

1.    The alleged economic or other burden on the interstate pork market imposed by

the Massachusetts law, including the marginal additional burden posed by Massachusetts' law

above and beyond California's similar law;

2.    The alleged cost of compliance of the Massachusetts law on the Plaintiffs, the

harm to their business interests flowing from the law, and the share of their business that

Massachusetts pork sales represent;

3.    The nature of the local benefit of the law and/or the justification for it, *i.e.*, the

extent to which the law advances animal welfare and other subsidiary purposes, and the extent to

which there is any evidence of discriminatory purpose or effect.

4.    The alleged burden, steps, and/or requirements that Plaintiffs "must" allegedly

undertake to trace, track or segregate compliant pigs and/or pork, including whether it is

"impossible" to prevent Plaintiffs' non-compliant pork from reaching Massachusetts;

## V.    <u>Jurisdictional Questions</u>

<u>Plaintiffs</u> state that this case presents a federal question and therefore this Court has

subject matter jurisdiction. The Parties agree that venue is proper in the District of Massachusetts

pursuant to 28 U.S.C. § 1391(b).  Plaintiffs dispute there is any preclusive effect to Plaintiffs'

claims as noted below and further that Defendants likely have waived any argument not raised in

their Motion to Dismiss, which has been ruled upon by this Court. (ECF 67).  As noted

previously, Plaintiffs are not members of National Pork Producers Council, and therefore cannot

have any preclusive effect.  Further, the cases *National Pork Producers Council v. Ross*, 143 S.

Ct. 1142 (2023) and *Iowa Pork Producers Association v. Bonta*, C.A. No. 21-cv-01663 (E. D.

Cal.), *appeal docketed* 22-55336 (9th Cir.) involved an *entirely different law from California*.

Plaintiffs reserve the right to further brief these issues, if the Court is inclined to hear

Defendants' arguments.

      <u>Defendants</u> require Plaintiffs to prove at trial that the Court has jurisdiction under Article

III.

      Defendants object to proceeding to trial without the opportunity to seek discovery as to

each of the Plaintiffs' standing to bring this suit.

      Defendants further object to proceeding to trial without the opportunity to seek discovery

into whether Plaintiffs' claims should be subject to preclusion given the relationship between

Plaintiffs in this case and the associational plaintiffs in last year's challenge to Massachusetts'

law, *Massachusetts Restaurant Association & National Pork Producers Council v. Healey*, C.A.

No. 22-cv-11245, which Plaintiffs in the current action did not join; as well as the relationship

between Plaintiffs and the associational plaintiffs in challenges to California's near-identical

Proposition 12, *National Pork Producers Council v. Ross*, 143 S. Ct. 1142 (2023) and *Iowa Pork

Producers Association v. Bonta*, C.A. No. 21-cv-01663 (E. D. Cal.), *appeal docketed* 22-55336

(9th Cir.) which Plaintiffs likewise did not join.  Upon information and belief, Plaintiffs'

interests already were represented in these prior cases, particularly in *Massachusetts Restaurant

Association v. Healey*.  Because Plaintiffs failed to join, intervene, and/or object in those cases if

their interests were not adequately represented by the associations of which they, upon

information and belief, are members, Plaintiffs should be precluded from raising the claims in

this action.  *See Chicago-Midwest Meat Ass'n v. City of Evanston*, 589 F.2d 278, 281 n.3 (1978)

(stating, in dormant Commerce Clause challenge brought by association of meat processors,

"[t]he defendants argue that the association should not be accorded standing because a judgment

against it might not be binding upon its members. We see little likelihood that the defendants

will suffer the burden of relitigating the claims raised in this case. The Stare decisis effect of our

decision provides the defendants with substantial protection against further litigation. In addition,

the defendants would have the opportunity in any case brought by members of the association to

argue that the members are bound by the Res judicata effect of our decision in this case") (citing

*Aluminum Co. of America v. Admiral Merchants Motor Freight, Inc.*, 486 F.2d 717, 720-21, (7th

Cir. 1973), *cert. denied*, 414 U.S. 1113) (other citations omitted).

## VI.    **Questions Raised by Pending Motions**

### A.    **Plaintiffs' Pending Motions**:

Plaintiffs have a pending Motion for Preliminary Injunction before the Court for

consideration, which has been ordered consolidated with a trial on the merits currently set for

October 10, 2023.  *See generally* ECF Nos. 26-27; 34, 38.

As discussed above, Plaintiffs believe this matter can be resolved via early motion for

partial summary judgment based on the discrimination purpose and effects under the dormant

commerce clause.

Plaintiffs are reserving the right to file one or more motion(s) *in limine* concerning

Defendants' witnesses pursuant to any pre-trial schedule this Court orders.

### B.    **Defendants' Pending Motions**:

As set forth below in IV(B), Defendants anticipate filing one or more motion(s) *in limine*

to exclude anticipated testimony by certain of Plaintiffs' witnesses and exhibits related thereto.

Further, Defendants anticipate filing a motion *in limine* to exclude non-relevant evidence, e.g., to exclude evidence of what Plaintiffs refer to as evidence "sponsors of the proposed Act directly misled voters to obtain the passage of the law." Defendants request that the Court set a deadline for the filing of any motions *in limine* 14 days before the date of the Final Trial Conference, with any oppositions to be filed 7 days before the date of the Final Trial Conference.

## VII.    Issues of Law, Including Evidentiary Questions

### A.    Plaintiffs' Issues of Law and Evidentiary Issues

Plaintiffs assert Massachusetts' Question 3 Minimum Size Requirements for Farm Animal Containment unconstitutionally targets out-of-state farmers and processors who ensure the supply of pork into Massachusetts. Specifically, Plaintiffs have requested declaratory, temporary and permanent injunctive relief to enjoin enforcement of the Act and its regulations. Substantial issues of law are at issue before the Court concerning the constitutionality of the Act and the regulations under the dormant Commerce Clause. Plaintiffs have asserted that the Regulations are unconstitutional under the dormant Commerce Clause and, accordingly, should be declared invalid under Massachusetts state law. *See* Causes of Action No. IX and X. The Plaintiffs seek clarity from the Court on whether the Court's dismissal of the substantive claims, also included the Counts IX and X which also directly tie to Cause of Action I. For a more thorough discussion of Plaintiffs' statement of the legal issues for consideration before this Court, Plaintiffs refer the Court to its Memorandum of Points and Authorities in Support of a Motion for Preliminary Injunction and Reply Memorandum in Support of Plaintiffs' Motion for Preliminary Injunction, with supporting Declarations. *See generally* ECF Nos. 26-27; 34, 38.

Plaintiffs reserve the right to object and/or move *in limine* regarding Defendants' witnesses and/or to exclude certain exhibits proposed by Defendants in accordance with any

pretrial schedule ordered by this Court.  As of today, Defendants have not provided any pre-trial disclosures of any expert witnesses and have not asserted they finalized their witness or exhibit lists to date.

**B.**    **Defendants' Issues of Law and Evidentiary Issues**

Defendants take the position that Plaintiffs have not yet demonstrated the Court has Article III jurisdiction, and that even if they can make that demonstration at trial, no relief is due.

Defendants understand from the Court's order [ECF No. 66] that Count I is the only remaining claim. Defendants have identified relevant issues of law on the remaining claim under the dormant Commerce Clause in their Opposition to Plaintiffs' Motion for a Preliminary Injunction and Motion to Dismiss papers [ECF Nos. 35, 35-1, 53, 54, 54-1].  The Massachusetts law does not (1) discriminate against interstate producers or processors of pork (2) prohibit the flow of interstate goods (3) control the cost or price of interstate goods (4) or distinguish between in-state or out-of-state retailers.

Defendants also state that the Law provides that its provisions "are severable and if any clause, sentence, paragraph or section of the law, or an application thereof, shall be adjudged by any court of competent jurisdiction to be invalid, such judgment shall not affect, impair, or invalidate the remainder thereof but shall be confined in its operation to the clause, sentence, paragraph, section or application adjudged invalid."  Mass. Gen. Laws ch. 129 App. § 1-9.

Defendants anticipate filing a motion *in limine* to exclude anticipated testimony by certain of Plaintiffs' fact witnesses, including that the declarations of those witnesses previously submitted in this matter [ECF Nos. 27-1, 27-2, 27-3, 27-4, 27-5, 27-6, 34, 36-2] (which Plaintiffs have asserted reflects the testimony those witnesses would offer at trial) (1) impermissibly contain expert opinion testimony that should be excluded under Federal Rule of Evidence 701,

(2) impermissibly contain opinions that exceed those witnesses' personal knowledge that should be excluded under Federal Rule of Evidence 602, (3) impermissibly contain speculative opinions that should be excluded under Federal Rules of Evidence 602 and 701(a); and (4) impermissibly contain legal conclusions that usurp the role of this Court as fact-finder and likewise should be excluded.

Defendants also anticipate filing a motion *in limine* to exclude certain anticipated testimony by the Plaintiffs' expert witnesses, as reflected in the declarations submitted previously in this case  [ECF Nos. 27-7, 27-8] (which Plaintiffs have asserted reflects the testimony those witnesses would offer at trial), including on the ground that portions of those opinions exceed the scope of the proffered expert's expertise and should be excluded under Federal Rules of Evidence 702 and 703, and *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (U.S. 1993).

Defendants also reserve the right to object to and/or move *in limine* to exclude certain of Plaintiffs' proposed exhibits, which Plaintiffs have not yet provided to the Defendants to review, and the right to object to and/or move *in limine* to exclude evidence that is not relevant or otherwise not admissible.

## VIII.  <u>Requested Amendments to the Pleadings</u>

Neither party currently seeks to amend the pleadings.

Plaintiffs request clarification from the Court as to whether portions of their Counts IX and X survive as related to the respective Commerce Clause challenges cited therein.

## IX.  <u>Additional Matters to Aid in Disposition of the Action</u>

### A.  Witnesses

 Pursuant to Local Rule 43.1(b)(2), the Parties will identify the witnesses they expect to testify live or by deposition, and the anticipated order in which they will testify, no later than seven days before the trial day on which the testimony is expected.

To facilitate Defendants' identification of their witnesses for the first day of Defendants' case, Plaintiffs will endeavor to identify the date on which it anticipates resting seven days before the trial day on which Plaintiffs anticipates resting.  The day after Plaintiffs provides such notice of the date it anticipates resting, Defendant will begin providing notice regarding its anticipated witnesses in accordance with the above procedures.  Similarly, if either party determines that it will not make an opening statement, that party will identify that to the other party seven (7) days prior to the commencement of trial.

Should unforeseen circumstances arise that change the witnesses anticipated to be called, the anticipated witness order, or the anticipated date of resting identified above, the Parties agree to promptly inform the other party.

### B.  Demonstratives/Chalks

Plaintiffs' demonstratives/chalks, if any, will be identified with PD numbers, starting with PD001.  Defendants' demonstratives/chalks, if any, will be identified with DD numbers, starting with DD001.

The Parties agree to provide a copy of its intended demonstratives/chalks to the other party no later than the day before the party intends to use the demonstrative/chalk, so that the other party may have sufficient time to raise any objections with the Court prior to the use of the at-issue demonstrative/chalk.  The party seeking to use a demonstrative/chalk will provide a

color representation of the demonstrative/chalk to the other party in both electronic and paper forms.

Blow-ups or highlights of exhibits or parts of exhibits or testimony are not required to be provided to the other party in advance of their use, as long as the exhibit itself has been properly disclosed pursuant to the requirements set by the Court. These provisions likewise do not apply to demonstratives/chalks created during testimony or demonstratives/chalks to be used for impeachment only, neither of which need be provided to the other party in advance of their use.

### C.  Admission of Legal Briefs, Declarations, and Attachments to Declarations

Plaintiffs contend all pre-trial briefs, declarations, and evidence attached thereto should be admitted of record for purposes of trial pursuant to Fed. R. Civ. Proc. 65(a).

Defendants object to the admissibility of Plaintiffs' legal memoranda as evidence; object to the admissibility of certain anticipated testimony reflected in Plaintiffs' declarations. Defendants note that the only attachments to either the memoranda or the declarations are the *curriculum vitae* of Plaintiffs' experts, which are not relevant evidence but instead reflect whether each expert might be qualified to opine on the subject matter for which they have been identified.

### D.  Other Requested Submissions

The Parties request the opportunity to submit a pretrial brief to address the Court's narrowed claims under review, pursuant to a schedule to be ordered at the time of the pretrial conference. The Parties further request that the Court clarify whether it would like the Parties to submit proposed findings of fact and conclusions of law, and if so, on what schedule.

Plaintiffs further contend several issues may be helpful to the Court and submitted through judicial notice, at a time to be designated by the Court. Plaintiffs further reserve the

right to file dispositive motions with respect to their remaining claims depending on the trial schedule ultimately adopted by the Court.

### E. Entry onto Premises

Defendants request that pursuant to Fed. R. Civ. P. 34(a)(2), Defendants' expert veterinarian be permitted to conduct a site visit of one or more of the Plaintiffs' operations to facilitate development of Defendants' experts' opinion, in light of the fact that Plaintiffs' recently-disclosed expert veterinarian was employed by Plaintiff Christensen Farms for more than 20 years and few (if any) veterinarians not employed by Plaintiffs likely have been permitted access to Plaintiffs' facilities. Defendants would be willing to abide by any customary bio-security protocols or restrictions required by Plaintiffs.

Plaintiffs object to the request in light of the current expedited trial nature and bio-security concerns associated with individuals visiting Farmer Plaintiffs' farming operations. Plaintiffs invite a meet and confer with Defendants to discuss any appropriate, alternative measures that are consistent with the expedited trial schedule and do not impose an undue burden on Plaintiffs in light of the bio-security issues raised herein, including providing Defendants with photos or videos created by Plaintiffs or persons under their control, interrogatories or documents for discovery.

## X.    **Probable Length of Trial**

If the Defendants maintain their current position on not proceeding on a Case Stated basis, Plaintiffs estimate that their entire case will be presented through 4-7 witnesses, taking approximately one (1) to two (2) days for direct testimony or a total of (3)-(4) days to include Defendants' cross-examination.

Defendants continue to reserve their right to seek a reasonable period of discovery prior to the first day of trial.  Subject to these reservations of rights, Defendants anticipate calling 3-5 witnesses and estimate that their entire case will be presented in (1) to (2) trial days for direct testimony or a total of (3)-(4) days to include Plaintiffs' cross-examination.

The Parties accordingly anticipate that trial will last approximately (6) to (8) trial days, if the matter is not held pursuant to a case stated basis as referenced previously by Plaintiffs.

The Parties state that the trial will be a nonjury trial.

## XI.    Names And Addresses of Witnesses

### A.    Witness Lists

Plaintiffs' Amended Witness List will be submitted on or before the time of the pretrial conference and be incorporated herein as **Exhibit B**.

Defendants' Witness List, which Defendants expressly reserve the right to amend/supplement, will be submitted on or before the time of the pretrial conference and be incorporated herein as **Exhibit C**.

### B.    Testimony by Deposition

The Parties have not designated any depositions for use in their respective case-in-chief, because no depositions have been taken.  Defendants object to proceeding to trial without the opportunity to depose the Plaintiffs' corporate designees, experts or other witnesses.

## XII.    List Of Proposed Exhibits

Plaintiffs' amended exhibit list will be submitted on or before the time of the pretrial conference and incorporated herein as **Exhibit D**.  Plaintiffs expressly reserve the right to supplement their proposed exhibit list.

Defendant's amended exhibit list will be submitted on or before the time of the pretrial conference and will be incorporated herein as **Exhibit E**. Defendants expressly reserve the right to supplement their proposed exhibit list, and object to proceeding to trial prior to being able to take discovery to identify potential evidence.

The Parties have not yet had an opportunity to review and object to one another's exhibits.  The Parties will endeavor to arrive at a stipulated list of exhibits expeditiously.

Each party reserves the right to use documents not set forth in its exhibit list for purposes of cross-examination and/or impeachment.

## XIII.    <u>Remaining Objections to Pretrial Disclosures</u>

Due to the expedited nature of this case, the Parties did not exchange pre-trial disclosures under Federal Rule of Civil Procedure 26(a)(3) and so have no respective positions on objections to the evidence identified therein.

If the Court sets a pre-trial schedule that includes pre-trial disclosures under Federal Rule of Civil Procedure 26(a)(3), the Parties reserve the right to object to any evidence in the other party's pre-trial disclosures.

Respectfully submitted,

TRIUMPH FOODS, LLC, CHRISTENSEN FARMS MIDWEST LLC, THE HANOR COMPANY OF WISCONSIN, LLC, NEW FASHION PORK, LLP, EICHELBERGER FARMS, INC., and ALLIED PRODUCERS' COOPERATIVE,

ANDREA JOY CAMPBELL, in her official capacity as Attorney General of Massachusetts, and ASHLEY RANDLE, in her official capacity as Commissioner of the Massachusetts Department of Agricultural Resources,

By their attorneys,

By: */s/ Ryann A. Glenn*
Robert L. Peabody
MA #551936, NY #1990654
HUSCH BLACKWELL LLP
One Beacon Street, Suite 1320
Boston, Massachusetts 02108
Telephone: (617) 720-5090
Facsimile: (617) 720-5092
robert.peabody@huschblackwell.com

Cynthia L. Cordes *(admitted pro hac vice)*
Ryann A. Glenn *(admitted pro hac vice)*
Michael Raupp *(admitted pro hac vice)*
HUSCH BLACKWELL LLP
4801 Main Street, Suite 1000
Kansas City, MO 64112
Telephone: (816) 983-8381
Facsimile: (816) 983-8080
cynthia.cordes@huschblackwell.com
ryann.glenn@huschblackwell.com
michael.raupp@huschblackwell.com
*Attorneys for Plaintiffs*

By their attorneys,

*/s/ Vanessa A. Arslanian*

Grace Gohlke, BBO No. 704218
Vanessa A. Arslanian, BBO No. 688099
Assistant Attorneys General
Massachusetts Office of the Attorney General
Constitutional and Administrative Law Division
One Ashburton Place
Boston, MA 02108
617-963-2527
617-963-2107
grace.gohlke@mass.gov
vanessa.arslanian@mass.gov

Maryanne Reynolds, BBO No. 627127
Assistant Attorney General
Massachusetts Office of the Attorney General
Constitutional and Administrative Law Division
10 Mechanic Street, Suite 301
Worcester, MA 01608
774-214-4407
maryanne.reynolds@mass.gov

*Attorneys for Defendants*

Dated: October 10, 2023

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants.

*/s/ Ryann A. Glenn*

Dated: October 10, 2023