UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TRIUMPH FOODS, LLC, CHRISTENSEN FARMS MIDWEST, LLC, THE HANOR COMPANY OF WISCONSIN, LLC, NEW FASHION PORK, LLP, EICHELBERGER FARMS, INC. and ALLIED PRODUCERS' COOPERATIVE, individually and on behalf of its members, <br><br> Plaintiffs, <br><br> v. <br><br> ANDREA JOY CAMPBELL, in her official capacity as Attorney General of Massachusetts, and ASHLEY RANDLE, in her official capacity as Massachusetts Commissioner of Agriculture, <br><br> Defendants. | Case No. 1:23-cv-11671-WGY <br><br> The Honorable William G. Young |

**BRIEF OF *AMICI CURIAE*[1] IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

*Amici* support the State's motion to dismiss for lack of Article III standing, and submit this supplemental brief to explain how Plaintiffs lack standing to challenge Question 3's exemption for sales occurring directly on the premises of facilities inspected by the USDA's Food Safety and Inspection Service ("FSIS-inspected facility exemption") because the application of state and

---

[1] Pursuant to this Court's order on September 19, 2023 (Dkt. No. 50) (denying animal welfare organizations' motion to intervene, but "welcom[ing] the proposed intervenors as amici curiae" and inviting them to "submit briefs on every issue," *amici curiae* The Humane Society of the United States, Animal Legal Defense Fund, Animal Equality, The Humane League, Farm Sanctuary, Compassion in World Farming USA, and Animal Outlook (collectively "*Amici*") have submitted amicus briefs throughout this litigation. If the Court will allow it, local animal welfare organizations the Massachusetts Society for the Prevention of Cruelty to Animals and Animal Rescue League Boston join existing *Amici* on this brief. Counsel for Defendants consented to their joining existing *Amici*, and counsel for Plaintiffs took no position with respect to the local animal welfare organizations joining as *Amici*, provided that the local organizations' participation will not increase or change arguments made in any briefing, and that they will not be seeking to participate in any other manner.

federal law at FSIS facilities remains a constant *whether Plaintiffs win or lose*. Because Plaintiffs cannot show that a Court order in their favor would change the *status quo*, nor otherwise redress their pled injuries, they cannot demonstrate causation and redressability as required to establish an Article III case or controversy. *Pugsley v. Police Dept. of Boston*, 472 Mass. 367, 371 (2015) (the court should address a lack of standing "whenever it appears, whether by suggestion of a party or otherwise" (quoting *Litton Bus. Sys., Inc. v. Comm'r of Revenue*, 383 Mass. 619, 622 (1981)).

The State's motion explains the serious injury-in-fact problem with Plaintiffs' case. But as to Plaintiffs' attack on the FSIS exemption, Plaintiffs' case suffers from an equally fatal defect. Specifically, *before* the enactment of Question 3, state laws in addition to or different than federal slaughter regulations were inapplicable within such facilities—in any state they are located in—due to the operation of federal law.[2] *After* the enactment of Question 3, state laws in addition to or different than federal slaughter regulations are *still* inapplicable within such facilities due to the operation of federal law and the challenged FSIS exemption in Question 3. And *if the Court strikes down the FSIS exemption*, then state laws in addition to or different than federal slaughter regulations are *still* inapplicable within such facilities due to the operation of federal law only. Thus, with or without the exemption, the application of state law and regulations to slaughterhouse operations remains the same.

A simple chart is helpful in illustrating this fundamental defect in plaintiffs' case:

| ***Application of State Laws within FSIS Facilities*** | **Before Question 3** (1976-2016) | **After Question 3** (2023) | **If Plaintiffs Prevail** (2024-onward) |
|---|---|---|---|
| ***State laws in addition to or different than federal laws and*** | Inapplicable due to federal law | Inapplicable due to federal law | Inapplicable due to federal law |

---

[2] The relevant provision of the Federal Meat Inspection Act provides that "[r]equirements within the scope of [the Federal Meat Inspection Act] with respect to premises, facilities and operations of any establishment at which inspection is provided under title I of this Act, which are in addition to, or different than those made under this Act" are preempted. 21 U.S.C. § 678.

| | | | |
|---|---|---|---|
| *regulations concerning federal slaughter operations* | | Inapplicable due to state law | |
| *State regulations in addition to or different than federal laws and regulations concerning slaughter operations* | Inapplicable due to federal law | Inapplicable due to federal law<br>Inapplicable due to state law | Inapplicable due to federal law |

The only way for Plaintiffs to resist this problem is to argue that the mere fact that one exemption in a properly enacted State law allegedly transgresses federal Constitutional authority somehow justifies overturning the entire law *in toto*. To be sure, if complete nullification of Question 3 was a possible outcome of Plaintiffs' attack on the FSIS exemption, Plaintiffs might indeed establish Article III standing. But where the only relief that would redress their injuries (invalidating all of Question 3) is a legal impossibility, there simply is no available order of redress for the Court to issue, and thus no Article III standing. Here, Plaintiffs' request that the Court throw out the baby, the bathwater, the bathroom, and the entire house, has no basis in either state or federal law, and thus renders their claimed injuries non-redressable, and their challenge nonjusticiable.

The threshold question in assessing whether Plaintiffs can obtain wholesale nullification of Question 3 due to an alleged Commerce Clause defect in a single exemption is not state law "severability," but rather the rules and limits of federal court jurisdiction to enjoin state actors under *Ex Parte Young* and its progeny. Thus, the longstanding rule is *not* to reach out and overturn state lawmaking as far as possible based on a Constitutional defect, but rather "when confronting a constitutional flaw in a statute, .... sever its problematic portions while leaving the remainder intact ...." *Signs for Jesus v. Town of Pembroke, NH*, 977 F. 3d 93, 100 (1st Cir. 2020), *quoting Ayotte v. Planned Parenthood of N. New Eng.*, 546 U.S. 320, 328-29 (2006). As the Supreme Court has made clear, "[b]ecause '[t]he unconstitutionality of a part of an Act does not necessarily defeat or affect the validity of its remaining provisions,' *Champlin Refining Co. v. Corporation Comm'n*

*of Okla.,* 286 U.S. 210, 234 (1932), the 'normal rule' is 'partial, rather than facial, invalidation.'" *Brockett v. Spokane Arcades, Inc.,* 472 U.S. 491, 504 (1985); *Ayotte*, 546 U.S. at 329 ("we try not to nullify more of a legislature's work than is necessary, for we know that [a] ruling of unconstitutionality frustrates the intent of the elected representatives of the people" (quotations omitted)).

Thus, as a matter of federal law, the relief Plaintiffs seek – an order voiding all of Question 3 because one provision purportedly exceeds the State's authority under the Commerce Clause – is simply not available, and the relief in this case cannot and will not redress any cognizable injury under Article III. This is a fatal legal defect, and itself dispositive. Plaintiffs' only retort is that, if the FSIS exemption were stricken, then Question 3's sales ban would be preempted by the FMIA. But it is settled law that state laws generally, and the FMIA's preemption clause specifically, only displace state law *insofar as is necessary to avoid interference with federal operations*. *See*, *e.g.*, *People v. Santorsola*, 170 Cal. Rptr. 3d 819, 823 n.4 (Cal. App. Dep't. Super. Ct. 2014) (the FMIA, regulations implementing it, and USDA each make clear that the scope of FMIA preemption is limited to state laws imposing requirements on conduct only at federally inspected facilities), *citing* 21 U.S.C.S. § 678; *Nat'l Meat Ass'n v. Harris*, 565 U.S. 452, 463 (2012). Thus, even if stripping the FSIS exemption from Question 3 raised a preemption problem, it would only displace Question 3 *at FSIS-inspected plants*, not everywhere in the State.

The outcome is the same when viewed through the lens of state law severability. Massachusetts courts and the legislature have made clear there is a strong preference for severability, such that "if any part of any statute shall be adjudged unconstitutional or invalid, such judgment shall not affect other valid parts thereof." *Peterson v. Commissioner of Revenue,* 444 Mass. 128, 138 (2005) (citing G.L. c. 4, § 6, Eleventh). The core question is whether there is reason to believe the lawmakers (or, citizens, in this case) would have enacted the law without the disputed

provision. *Id.* at 139 ("We must seek to ascertain whether the Legislature would 'have enacted [the] particular bill without the unconstitutional provision'"). In this case, the measure in question passed by an overwhelming 77.6 % majority – a landslide in modern electoral politics. Plaintiffs have not pled and cannot possibly prove that, absent the FSIS exemption, the measure would not have been enacted. Accordingly, both as a matter of federal constitutional practice and state law severability, the sweeping and unorthodox remedy Plaintiffs *must request* to demonstrate redressability is simply not available.

Finally, Plaintiffs' effort to establish jurisdiction to challenge the exemption is not only legally flawed, but also factually deficient because Plaintiffs do not control where their pork is purchased, and the product cannot be resold in Massachusetts regardless of whether the FMIA exemption is set aside by the Court. Plaintiffs' product is sold exclusively by Seaboard, a non-party that controls where and to whom Plaintiffs' pork is sold. Decl. of Matthew England ¶ 16, ECF No. 27-1; Mot. to Dismiss, ECF 115, at 3-5. Further, Seaboard's customers buy pork to sell it on to consumers, but in Massachusetts, any resale of noncompliant pork purchased at an exempt FSIS-inspected facility is prohibited by Question 3.[3] Thus, even if Seaboard attempted to sell pork at a facility in Massachusetts subject to the FSIS exemption to in-state grocery stores or other resale customers these buyers are highly unlikely to buy pork they cannot even sell in-state pursuant to the remainder of Question 3. Plaintiffs plead nothing, and point to no evidence, that could plausibly negate these conclusions; thus, any Court order short of a complete nullification of Question 3 will not redress their injuries.

---

[3]   Seaboard Corporation 2023 10-k Annual Report, at p. 2, https://www.sec.gov/ix?doc=/Archives/edgar/data/0000088121/000008812123000020/seb-20221231x10k.htm (Seaboard's pork subsidiary "primarily produces and sells pork products to further processors, foodservice operators, distributors and grocery stores.").

-6-

For these reasons, as well as those articulated by the State Defendants, Plaintiffs have not and legally cannot plead or prove Article III injury, causation and redressability, and judgment should be entered in favor of Defendants.

Dated: December 21, 2023

*/s/ Kimberly D. Ockene*
Kimberly D. Ockene
MA #638097
Humane Society of the United States
1255 23rd St. NW, Suite 450
Washington, DC 20037
Telephone: (202) 452-1100
kockene@humanesociety.org

Bruce A. Wagman (CSB No. 159987)
(*pro hac vice* pending)

Riley Safer Holmes & Cancila LLP
456 Montgomery Street, 16th Floor
San Francisco, CA 94104
Telephone: (415) 275-8540
Facsimile: (415) 275-8551
bwagman@rshc-law.com

*Counsel for Amici*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 21st day of December 2023, the foregoing document was electronically filed with Clerk of the Court using the CM/ECF system which sent electronic notification of such filing to all CM/ECF Participants.

<em>/s/ Kimberly D. Ockene</em>_____